**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JULIAN PERDOMO, *on behalf of himself, FLSA Collective Plaintiffs and the Class,*

                        Plaintiff,

                -against-

113-117 REALTY, LLC, DIRECT PROPERTY MANAGEMENT LLC, and LAWRENCE MAROLDA,

                        Defendants.

**Civil Action No: 7:18-cv-09860**

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………...…..……..iii

INTRODUCTION……………………………………………………………………..…...1

STATEMENT OF THE FACTS……………………………….………………………..…...1

LEGAL STANDARD……………………………………………………………………...…4

    Motion to Dismiss under FRCP 12(b)(6)…………………………………...……..4

ARGUMENT…………………………………………………………………………...…5

    Plaintiff's FLSA AND NYLL Retaliation Claims, Respectively Count III and IV in the Plaintiff's Amended Complaint, Should be Dismissed in Accordance with FRCP 12(b)(6) Because Plaintiff Fails to Adequately Plead NYLL and /or FLSA Retaliation claims……………………………………………………………………...…….....5

        Plaintiff failed to plead with specificity that he participated in a protected activity known to the employer……………………………………………...………….6

        There is no causal connection between the protected activity and the adverse employment action……………………………………………………………...9

        Plaintiff Failed To Plead A Proper Claim for Retaliation under the NYLL……...11

        The Court Should Deny Supplemental Jurisdiction Over the NYLL Claims…..12

    Plaintiff's NYLL Spread Of Hour Claims Should Be Dismissed For Failing to Plead with Particularity……………………………………………………………...…….13

    The Allegations Contained in Plaintiff's Original Complaint Should Supersede the Allegations in his Amended Complaint with Respect to his Overtime, Spread of Hours, and Retaliation Claims…………………………………………………………………15

CONCLUSION……………………………………………………………………..…...17

## TABLE OF AUTHORITIES

**CASE LAW**

*Fernandez v. Chertoff,* 471 F.3d 45 (2d Cir. 2006)…………………………………..……4

*Ashcroft v. Iqbal,* 566 U.S. 662 (2009)…………………………………………………….4

*Bell Atl. Corp. V. Twombly,* 550 U.S. 544 (2007)………………………………..……….…..4,5

*In re Elevator Antitrust Litigation,* 502 F.3d 47(2d Cir. 2007)………………………………..4

*Pension Benefit Guar. Corp v. White,* 998 F.2d 1192 (3d Cir. 1993)……………………….…5

*Greathouse v. JHS Sec. Inc.,* 784 F.3d 105 (2d Cir. 2015)………………………………..…….6

*Kasten v. Saint Gobain Performance Plastics Corp.,*131 S.Ct. 1325…………………………....6

*McManamon v. Shinseki*, No. 11–CV–7610, 2013 WL 3466863 (S.D.N.Y. July 10, 2013)………………………………………………………………………………………..9

*Herling v. N.Y.C. Dep't of Educ.*, No. 13–CV–5287, 2014 WL 1621966 (E.D.N.Y. Apr. 23, 2014)……………………………………………………………………….…………………9

*McNair v. N.Y.C. Health & Hosp. Co.*, 160 F.Supp.2d 601 (S.D.N.Y.2001)……………...…….9

*Wang v. Palmisano*, 157 F.Supp.3d 306 (S.D.N.Y. 2016)…………………..…………………9

*Patane v. Clark*, 508 F.3d 106, 112 & n.3 (2d Cir. 2007)……………………...……………….9

*Flick v. American Financial Resources*, Inc., 907 F.Supp.2d 274 (E.D.N.Y. 2012)...……….11, 12

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)…………………………..……………….12

*Figurowski v. Marbil Investors, LLC*, No. 14-CV-7034, 2015 WL 4000500 (E.D.N.Y. July 1, 2015)……………………………………………………………………………………………12

*Azeez v. Ramaiah*, No. 14-CV-5623 2017 WL 1637871 (S.D.N.Y. April 9, 2015)…..………....13

*Kilkenny v. Law Office of Cushner & Garvey, LLP*, No. 08-cv-588, 2012 WL 1638326 (S.D.N.Y. May 8, 2012)……………………………………………………………………………………….15

*Palm Beach Strategic Income, LP v. Salzman*, P.C., No-10-cv-261, 2011 WL 1655575 (E.D.N.Y. May 2, 2011)……………………………………………………………………………………….15

*Colliton v. Cravath, Swaine & Moore LLP,* No. 08-cv-0400, 2008 WL 4386764 (S.D.N.Y. Sept. 24 2008)……………………………………………………………………………………….15

**STATUTES**

29 U.S.C. § 215(a)(3)……………………………………………………...….……..5,6,7

N.Y. Labor L. § 215(1)(a)……………………………………………………..…………11

28 U.S.C. § 1367(a)……………………………………………………………..……….12

NYCRR § 142-2.4……………………………………………………………………….13

NYCRR § 142-2.18………………………………………………………...…………….13

# I.     INTRODUCTION

Defendants submit this memorandum in support of the motion to dismiss the Second Amended Complaint for failure to state a claim for which relief can be granted. Plaintiff Julian Perdomo ("Perdomo" or "Plaintiff") brought this action, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and the New York Labor Law ("NYLL"), on October 25, 2018 (see**,** Plaintiff's Complaint, **Exhibit A** to Portesy Declaration). Thereafter on January 15, 2019, Plaintiff's counsel filed his First Amended Complaint ("FAC"), alleging claims for retaliation against Defendants (see, Plaintiff's Amended Complaint, **Exhibit B** to Portesy Declaration). In response, Defendants filed a motion to dismiss on February 26, 2019. By Court Order, Plaintiff had the option of responding to the motion to dismiss or amending his pleadings. Plaintiff chose to amend his pleadings, and on March 21, 2019, Plaintiff filed his Second Amended Complaint ("SAC") (see, Plaintiff's Second Amended Complaint, **Exhibit C** to Portesy Declaration). Defendants followed with this motion presently before the Court.

# II.     STATEMENT OF THE FACTS

In the FAC, Plaintiff alleged he was employed by Defendants from around July 2013 as a maintenance and repair worker until February 21, 2018. He alleged that "Plaintiff was scheduled to work and did work, from 8am until 5 pm, for five (5) days a week, and from 12pm to 4pm, for one (1) day a week. At all times, Plaintiff Julian Perdomo was on call by Individual Defendant and the property managers of the building he worked for, and as a result, Plaintiff regularly worked an extra nine (9) hours per week." *(See, Dkt. No. 20, Amended Complaint at 25).* Plaintiff further alleged that he was not paid proper overtime wages, under the FLSA and the NYLL and that he was not paid, spread of hours pay under Section 142-2.18 of 12 NYCRR 142 of the NYLL. In

addition, Plaintiff also claimed retaliation on behalf of Defendants whereby the Plaintiff further alleged that he complained to his manager and supervisor Francisco De Jesus ("De Jesus") regarding his unpaid overtime and that Defendant Lawrence Marolda ("Marolda") instructed Plaintiff's supervisor De Jesus to "just fire him" [Plaintiff] (*See, Dkt. No. 20, Amended Complaint at 35*).

In Plaintiff's SAC, Plaintiff changed the facts in relation to his retaliation claims and the hours that he worked. When stating the factual allegations for his retaliation claims, Plaintiff claimed to have "complained to various property managers and superintendents, and also specifically to Individual Defendant, that he was not properly compensated and that they failed to pay him for all his hours worked" throughout his employment with Defendants. (*See, Dkt. No. 33, Second Amended Complaint at 35*). He further alleged that when he spoke directly to Mr. Marolda, Mr. Marolda "brushed him off and told him a variety of excuses, from telling Plaintiff to speak to his direct superintendent or manager to informing Plaintiff that Defendants will take care of the underpayment." *Id*. Plaintiff claims to have complained to Mr. Marolda once more in February 2018, shortly before he was terminated, that "he was being underpaid for working seven days a week and that Defendants needed to pay him for his overtime hours worked." *Id*. Plaintiff alleged to have told Mr. Marolda that his compensation was "messed up" and he was not paid proper overtime. *Id*. Plaintiff then makes a leap and alleges that "Mr. Marolda terminated Plaintiff's employment in retaliation for his continued complaints" on February 21, 2018, without any evidence of Mr. Marolda's motives. *Id.*

Plaintiff also changed the facts surrounding the hours in which he worked from the FAC to the SAC. In the SAC Plaintiff claims that he was "scheduled to work, and did work, fifty-six (56) hours per week, from 8:00am until 5:00pm, from Mondays through Fridays, from 12:00pm to

4:00pm, on Saturdays, and from 10:00am to 5:00pm, on Sundays." (*See, Dkt. No. 33, Second Amended Complaint at 25*). Plaintiff added a whole new day of work to his set of hours worked. Further, Plaintiff alleged that, he was on call and regularly worked "at least an additional six (6) hours per week, on top if his scheduled fifty-six (56) hours per week." *Id.* He claimed that while on he was "required to work until 7:00pm at least three times per week, Mondays through Fridays" and ultimately worked for sixty-two (62) hours per week regularly. *Id.* Finally, Plaintiff alleges to have worked over ten 10 hours for three (3) days per week.

The changes from the FAC to the SAC are not expansions on previous allegations to clarify the deficiencies brought up in Defendants' motion to dismiss. Instead, Plaintiff concocted a whole new set of factual allegations without any further reasoning or evidence as to where this new information came from. It is worth noting that Plaintiff's initial purpose behind amending the Complaint the first time was to add a claim for retaliation. This means that Plaintiff took the time to discuss the retaliation claims with his counsel, but Plaintiff never mentioned that he complained to Defendant Marolda directly. It is even more alarming since Plaintiff is alleging to have complained to numerous property managers and superintendents, along with Defendant Marolda. Yet, in the FAC Plaintiff only recalled making complaints to his immediate supervisor, Francisco DeJesus on a single occasion. These are not incidental factual allegations carrying little weight in the litigation, but rather ground rattling paramount facts for which the entire litigation hinges.

It is important to note that Defendant Direct Property Management was not incorporated until September 2015, and did not open its doors for business until January 2016 (See, the NYS Department of State Entity Information for Defendant Direct Property Management, **Exhibit D** to Portesy Declaration). Plaintiff as a porter, his primary responsibilities were for janitorial duties, he did not work overtime hours. Porters are not part of the on-call staff as his duties included cleaning

the buildings during business hours. Plaintiff and Defendant Marolda had limited, if any conversations as there is a language barrier between the two parties.

III.   **LEGAL STANDARD**

### I.   **Motion to Dismiss under FRCP 12(b)(6).**

In considering a motion to dismiss for failure to state a claim upon which relief can be granted, under FRCP 12(b)(6), the Court is to accept as true all well-pleaded facts alleged in the Complaint and draw all reasonable inferences in favor of the Plaintiff. *See Fernandez v. Chertoff,* 471 F.3d 45,51 (2d Cir. 2006). To survive a motion to dismiss under 12(b)(6), Plaintiff must plead enough facts "to state a claim for relieve that is plausible on its face." *Ashcroft v. Iqbal,* 566 U.S. 662, 678 (2009)*; Bell Atl. Corp. V. Twombly,* 550 U.S. 544, 570 (2007). The plausibility standard required more than a showing of "sheer possibility that the defendant has acted unlawfully" and requires a plaintiff to make "more than an unadorned, the-defendant-unlawfully-harmed-me accusation… devoid of 'further factual enhancement.'" *Id.* To meet this standard a plaintiff must plead sufficient factual content to allow the court to draw the reasonable inference that the defendant is liable for misconduct alleged. *Iqbal,* 566 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Second Circuit has followed the heightened pleading standard enunciated in *Twombly* where the Supreme Court "explicitly disavowed…'the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 550 U.S. 544. The Second Circuit has acknowledged that in order to survive a motion to dismiss, a complaint must set forth sufficient facts so as to make a plaintiff's claims plausible, not merely conceivable. *See In re Elevator Antitrust Litigation,* 502 F.3d 47(2d Cir. 2007). In the instant matter, Plaintiff's claims are not

plausible because he does not meet this standard even in the light most favorable to the plaintiff allowing all favorable inferences.

In addition, the court may consider the allegations set forth in the complaint as well as "matters of public record" and "an undisputedly authentic document that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp v. White,* 998 F.2d 1192, 1196-97 (3d Cir. 1993).

## IV.   <u>**ARGUMENT**</u>

### A.  **Plaintiff's FLSA AND NYLL Retaliation Claims, Respectively Count III and IV in the Plaintiff's Amended Complaint, Should be Dismissed in Accordance with FRCP 12(b)(6) Because Plaintiff Fails to Adequately Plead NYLL and /or FLSA Retaliation claims.**

Under the FLSA, an employer is prohibited from "Discharging or in any other manner discriminating against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA. *29 U.S.C. §215(a)(3).* The Plaintiff bears the burden of setting forth a prima facie case of discrimination/retaliation by establishing, (1) participation in protected activity known to the employer, (2) an employment action disadvantaging the employee, and (3) a causal connection between the protected activity and the adverse employment action. Fair Labor Standards Act of 1938, § 15(a)(3), 29 U.S.C.A. § 215(a)(3)." Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). The factual allegations also must be more than speculative. Id.

1. **Plaintiff failed to plead with specificity that he participated in a protected activity known to the employer.**

In *Greathouse v. JHS Security*, the second circuit concluded that "an employee may premise a section 215(a)(3) retaliation action on an oral complaint made to an employer, so long as—pursuant to *Kasten*—the complaint is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint Gobain Performance Plastics Corp.*,131 S.Ct. at 1335; *Greathouse v. JHS Sec. Inc.,* 784 F.3d 105, 107 (2d Cir. 2015).

*Here,* the only quoted statement that Plaintiff alleges is that he told Defendant Marolda his compensation was "messed up" (*See, Second Amended Comp. at 35*). Even if the allegation are true and viewed under the most favorable light toward the Plaintiff, the Plaintiff did not make a complaint that falls under the "protected activity" standard set out by the FLSA and interpreted by case law Specifically, the Plaintiff's allegations fail to show that the plaintiff made a complaint that was both sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection, as set out by the Supreme Court in *Kasten.* Furthermore, the Second Circuit in Greathouse v. JHS Security, saw the problem with the ambiguity of oral complaints and formulated certain limitations, the Second Circuit Stated

> "Our reading is subject, however, to certain limitations. As observed in part by the *Kasten* Court, whether the "filing of a complaint"—especially an oral complaint delivered directly to an employer—constitutes an act protected by FLSA is a context-dependent inquiry. In some circumstances, an employer may find it difficult to recognize an oral complaint as one invoking rights protected by FLSA. It seems to us inconsistent with *Kasten* to elevate a grumble in the hallway about an employer's payroll practice to a complaint "filed" with the employer within the meaning of section 215(a)(3). *Greathouse v. JHS Sec. Inc.,* 784 F.3d 105, 115–16 (2d Cir. 2015).

Here, the Plaintiff's conclusory statement that his compensation was "messed up" is insufficient to allow us to deduce whether or not this is a protected complaint within the meaning of section §215(a)(3) or whether it amounts to what the second circuit called a "grumble in the hallway." The SAC states that Plaintiff complained that "he was being underpaid for working seven days a week and that Defendants needed to pay him for his overtime hours." (*See, Second Amended Comp. at 35).* The SAC then states, "Plaintiff told Mr. Marolda that his compensation was "messed up" and that they shorted him for the overtime hours." *Id.* Viewing these conversations under a minimal level of scrutiny, it is painstakingly apparent that these two statements are entirely different conversations.  Merely stating that your compensation was "messed up" and that you were shorted for hours worked is not "sufficiently clear and detailed" for a reasonable employer to understand an instant triggering of a protection of an employees' rights under the relevant statutory schemes governing retaliatory conduct by employers. Plaintiff's explanation of what his statements meant, such as stating that he was shorted for his hours worked is the same as stating that he needed to be paid for his overtime hours worked, is irrelevant. The determining factor is what was actually stated to the Defendant. It  is abundantly clear, that even if the Plaintiff said what he has alleged  in either the SAC or the FAC, the statements do not amount to statements that trigger a retaliatory animus toward the plaintiff and retaliatory firing. Putting aside the fact that the Plaintiff and Defendant Marolda speak different language, one would be hard pressed to find an employer that would take immediate action against an employee for stating his pay was "messed up." This type of discussion is precisely the "grumble in the hallway" Which the courts in this Circuit have found not to be actionable to trigger retaliation.  It is also important to note that Plaintiff does not state a specific date these alleged conversations took place which illustrates that the statements about his wages are at worst a complete fabrication which predicate

the "moving goal posts" of a constantly rewritten story through multiple amended pleadings and at best, statements that do not give rise to a finding of retaliatory animus by Defendants.

Further, there is no insight into the conversations he had with these various property managers and superintendents, no reference as to which property managers or superintendents, or what conversations had taken place. In fact, Plaintiff did not even plead the facts that he alleged in the FAC. There was no reference to his property manager, Francisco DeJesus, or the alleged conversation that took place between them. As for the other alleged conversations with Defendant Marolda, there was also no context as to what was said to Defendant. It is worth noting that Defendant Marolda does not speak any Spanish, which is Plaintiff's primary language. In reality, Plaintiff never uttered one complaint to Defendant Marolda, and there had been minimal, if any, conversations between Plaintiff and Defendant Marolda.

Finally, the Court must take note of the significant leaps that Plaintiff took from the allegations made in the FAC to the allegations forwarded in the SAC. Plaintiff took the time to amend his original complaint solely to add an allegation for retaliation which involves that Plaintiff taking the time to speak with his lawyer regarding complaints made to his direct supervisor and property manager, but conveniently withheld the alleged complaints he made to Defendant Marolda from his lawyer. It was not until Defendants pointed out the significant insufficiencies in his allegations that Plaintiff had concocted an elaborate ruse involving an entirely new fact pattern surrounding the complaints he made to Defendants to conveniently coalesce with a retaliation claim. The inconsistency is significant in that Plaintiff originally alleged one single complaint to one property manager in the FAC, but then subsequently managed to recall a litany of conversations with multiple parties including property managers, superintendents and Defendant Marolda himself in the SAC. Although, he now recalls these many conversations, he fails to provide any context to

these new conversations with these parties with respect to when the conversations took place, whether additional parties were present during the conversation, and the dates of these purported conversations. While time certainly may make the salient facts hazy with respect to the allegations, it is a highly dubious presumption that the plaintiff could not recall any of these related facts with respect to even one of these conversations.

### 2. <u>There is no causal connection between the protected activity and the adverse employment action.</u>

To establish the causal connection requirement, Plaintiff may specifically allege such a connection either "directly, by alleging facts of a retaliatory animus against him," or "indirectly, either by showing a temporal relationship in which the protected activity was followed closely in time by discriminatory treatment, or by other circumstantial evidence." *McManamon v. Shinseki*, No. 11–CV–7610, 2013 WL 3466863, at \*12 (S.D.N.Y. July 10, 2013); *see also Herling v. N.Y.C. Dep't of Educ.*, No. 13–CV–5287, 2014 WL 1621966, at \*10 (E.D.N.Y. Apr. 23, 2014) (same); *McNair v. N.Y.C. Health & Hosp. Co.*, 160 F.Supp.2d 601, 604 (S.D.N.Y.2001). Although a plaintiff does not need to provide evidence of a causal connection to defend a motion to dismiss, a plaintiff must at least plead facts showing an ability to provide evidence of the connection. *Wang v. Palmisano*, 157 F.Supp.3d 306, \*329 (S.D.N.Y. 2016); see *Patane v. Clark*, 508 F.3d 106, 112 & n.3 (2d Cir. 2007). Further, a plaintiff must show that his or her "participation in a protected activity *known* to defendants" in the allegations to prove such a connection.

It cannot be said that Defendant Marolda knew about Plaintiff's participation in a protected activity even Plaintiff's allegations as true, as he did not make a clear and detailed complaint to Defendant Marolda. Along with Plaintiff's lack of context as to the conversations, he also does not add much insight as to when these conversations took place. Plaintiff alleges to just have

complained to Defendants throughout his employment. If Plaintiff truly felt he was not being appropriately compensated for his entire employment with Defendants, it begs the question as to why he would continue working for them or file a complaint with one with a statutory adjudicatory authority for wage claims such as the New York State Department of Labor. Further, Plaintiff just alleges to have had his final conversation with Defendant Marolda some time in February 2018. Plaintiff does not even connect the dates, providing for an explanation that after he made this complaint, he was fired. Instead Plaintiff claims that his continued complaints are what led to his termination. He fails to provide adequate rationale as to how the complaints throughout his entire employment history were connected to his termination. Plaintiff never investigated the reason for the separation for employment, which any alleged employee would seek to garner a rationale for their termination rather than accept the termination blindly. Therefore, it is obvious that the plaintiff had the malicious intent to concoct this entire retaliation claim from the onset as retribution for his termination.

The retaliation fact pattern set forth in the Second Amended Complaint, begs the question whether the employee [Plaintiff] realizing his employer [Defendants] had become privy to his poor job performance and employee would therefore utilize such a fabrication to justify his claim for unpaid wage and retaliation in a vain attempt to seek retribution against an employer who was merely terminating an employee who was no longer "pulling their weight." If these complaints about unpaid wages were truly staggered throughout his employment to multiple parties connected to the Defendant Marolda's enterprise, it seems that the defendants would have moved faster to terminate his employment rather than sitting around absorbing this alleged barrage of wage complaints waiting for "straw that broke the camels back" complaint to terminate Plaintiff.

The reason for Plaintiff's termination was a poor attendance record among a myriad of other employment issues, some of which rose to the level of suspected illegal conduct, that were the proximate cause of termination. The causal connection Perdomo attempts to create out of thin air to support a specious retaliation claim rests its laurels on statements that were not made to Defendants and further represent a bold attempt to prevent his terrible work ethic, tardiness and other activities that led to his separation of employment. These claims do not pass muster under the laws in this Circuit with respect to retaliation claims. As such, Plaintiff's barebones allegations of retaliation under the FLSA are insufficient and therefore must be dismissed.

### 3.  Plaintiff Failed To Plead A Proper Claim for Retaliation under the NYLL

Section 215 of the New York Labor Law prohibits retaliation against any employee who "has made a complaint to his or her employer, or to ... any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of the New York Labor Law. *N.Y. Labor L. § 215(1)(a)*; see *Flick v. American Financial Resources*, Inc., 907 F.Supp.2d 274 (E.D.N.Y. 2012). A plaintiff must state activity he reasonably believes created a violation of the NYLL. Although this is a broader standard than under the FLSA, a plaintiff still must state conduct in the complaint that shows a violation of the NYLL. *Id.*

In the *Flick v. American Financial Resources, Inc*. case, the plaintiff presented emails that she inquired about whether she was paid the appropriate commission. Even though she supplied actual evidence of her inquiring about the pay, the court still held that plaintiff did not sufficiently plead a violation of retaliation of the NYLL. *Id.* The court held that to rule otherwise "would mean that any time an employee makes an inquiry as to the propriety of a contractual payment, such complaint can form the bases of a Labor Law retaliation claim, and that "the coverage of the statute cannot be so broad." *Id.* at 282.

As previously discussed, the only contextual conversation that Plaintiff provided in his complaint was that he told Defendant Marolda that his compensation was "messed up" and that he was shorted for his overtime hours. Just as is in the *Flick* case, Plaintiff was not clearly stating conduct that showed a violation of the NYLL, but rather just making an inquiry of payments. Allowing for such a "complaint" to be sufficient for a claim for retaliation under the NYLL, would open the litigation floodgates for any disgruntled employee who was fired to bring vindictive allegations against a previous employer.

### 4.   <u>The Court Should Deny Supplemental Jurisdiction Over the NYLL Claims</u>

Plaintiff brings his state law claims  under supplemental jurisdiction pursuant to 28 U.S.C § 1367, which allows a federal court to exercise jurisdiction over state law claims that arise from the same case or controversy as the federal claims. *28 U.S.C. § 1367(a).* In order to determine whether claims arose from the same case or controversy, a court will consider if they "derive from a common nucleus of operative fact," and if they are claims which are ordinarily tried in one judicial proceeding. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). In *Figurowski v. Marbil Investors, LLC*, No. 14-CV-7034, 2015 WL 4000500 (E.D.N.Y. July 1, 2015), the plaintiff alleged wage and hour violations of the FLSA and the NYLL and the Defendants moved to dismiss the NYLL wage and hour claims. The court dismissed plaintiff's retaliation and age discrimination claims because there was no common nucleus of operative fact over the federal and state law claims. *Id.* The court held that the wage and hour claims would require evidence that would be "vastly different and unrelated factual issues," which would focus on whether there was adverse employment action rather than hours worked or compensation paid. *Id.* at *3. Due to the fact that

"these claims would be based on evidence and testimony completely unrelated to" each other, the court declined supplemental jurisdiction over the retaliation and discrimination claims. *Id.* at *3.

Similarly, Plaintiff's failure to allege a violation of retaliation claims within the FLSA are clear as he did not provide any evidence that he took part in a protected activity, nor did he provide a causal connection between the activity and the adverse employment action. As will be addressed below, Plaintiff's spread of hour claims and overtime claims must also be dismissed for insufficient pleadings. If Plaintiff's retaliation claims under the FLSA are dismissed, in turn these retaliation claims under the NYLL must be dismissed. Similarly, to the *Figurowski* case, there will be no "common nucleus of operative fact" between the state law retaliation claims and the wage and hour claims. The Court should dismiss the NYLL retaliation claims for failure to clearly allege a violation, but even if the Court does not, it should dismiss the claims for lack of supplemental jurisdiction.

### B.  Plaintiff's NYLL Spread Of Hour Claims Should Be Dismissed For Failing to Plead with Particularity

Under the NYLL "an employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which…the spread of hours exceeds 10 hours.." NYCRR § 142-2.4. Spread of hours refers to the period from the beginning of an employees work day until the end of an employees work day. NYCRR § 142-2.18. In order to plead a claim for spread of hours, a plaintiff's complaint must at minimum allege "a single day on which [he] worked more than 10 hours" without receiving the proper pay. *Azeez v. Ramaiah*, No. 14-CV-5623 2017 WL 1637871 (S.D.N.Y. April 9, 2015).

Plaintiff states that "[He] was schedules to work, and did work…from 8:00am until 5:00 pm, from Mondays through Fridays, and from 12:00pm to 4:00pm, on Saturdays, and from 10:00am to 5:00pm, on Sundays." (*See Second Amended Complaint* at 25). Plaintiff also alleges that he regularly worked at least an additional nine (6) hours during the week. *Id*. Plaintiff goes on to state that he had to work until 7:00pm at least three times a week from Monday to Friday as he was on call. *Id.* As Plaintiff was a porter, in charge of keeping the buildings clean, he was not an employee that was on-call. The administrative role of a superintendent was the position that was expected to be on-call. Further, even taking Plaintiff's allegations as true, the nature of being on-call allows for the inference that there is not a set schedule. It is dependent on the fact that there is an emergency situation, which requires an employee to return to work in order to address the emergency situation. One would be hard pressed to find an employer in the Defendants' industry systematically using temporary shift mechanisms such as the one described when the needs of the maintenance of a building are highly. This contrasts to an industry such as retail where this mechanism used constantly with the ebb and flows of sales. The specific pleading standard exists to force a prospective plaintiff to state with specificity the precise shifts they worked.

With the information provided, the Court should derive at the educated inference that Plaintiff worked less than ten hours these three days a week. Plaintiff failed to accurately describe how his employment role allowed him to work days that exceeded ten (10) hours. Rather, Plaintiff instead provided a vague array of numbered hours without the parallel analysis of the shifts or stating with specificity the relevant days, if any, in which he worked shifts in excess of ten hours in a given day. This fits part and parcel with Plaintiff's distortion of the facts for his retaliation claims to also distort the facts with fiction to conveniently create wage claims which are non-existent. For this reason, Plaintiff's spread of hours claim must be dismissed as he has failed to properly plead

**C. The Allegations Contained in Plaintiff's Original Complaint Should Supersede the Allegations in his Amended Complaint with Respect to his Overtime, Spread of Hours, and Retaliation Claims**

The allegations contained in Plaintiff's FAC prevent him from any recovery as he did not properly plead a claim for his overtime, spread of hours pay, or retaliation claims. For this reason, Plaintiff amended his complaint with the opportunity to address the deficiencies in his complaint. However, Plaintiff did not strengthen the claims that he originally plead in the FAC by adding more context or evidence to support his claims, but instead, Plaintiff's SAC added information that completely contradict the allegations in the FAC. The Court has authority to disregard an amended pleading that directly contradicts facts that have been alleged in prior pleadings. *Kilkenny v. Law Office of Cushner & Garvey, LLP*, No. 08-cv-588, 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012); *see Palm Beach Strategic Income, LP v. Salzman*, P.C., No-10-cv-261, 2011 WL 1655575, at *5 (E.D.N.Y. May 2, 2011). "Where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true." *Colliton v. Cravath, Swaine & Moore LLP,* No. 08-cv-0400, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24 2008).

The Complaint in this action include several self-serving and maliciously false allegations regarding retaliation that even superficial analysis of the relationship between the Plaintiff and Defendant in this action would indicate that they are simply not true. Moreover, the facts concerning the purported retaliation morphed significantly from the each amended pleadings. The initial allegations stated that the basis for retaliation were third party hearsay allegations in the FAC. After the filing of Defendant's Motion to Dismiss, raising the specter of how the Plaintiff

could be privy to such third-party hearsay statements, the allegations miraculously changed to first person plaintiff direct communications between Plaintiff and Defendant in the SAC. One would be correct to assume that a client would distinctly recall whether they had direct communications with the defendant, rather than third party hearsay from another supervisor, especially when it states in the SAC that the last complaint was done in a face-to-face conversation, an interaction that would carry with it the level of hostility a plaintiff would surely recall if these allegations were truly retaliatory in nature. This is elementary and an attorney in the federal court system should be keen enough to properly extract this information from his client without the necessitation of multiple amended complaints. Further, Plaintiff did not even include the allegations that he stated in the FAC, but rather just makes a general statement that he complained to numerous property managers and superintendents without specifically pleading the exact conversation between him and the property manager Francisco DeJesus.

Further, Plaintiff alleged to have worked for 6 days a week with an additional 9 hours of work in the FAC, which he changed to 7 days of work with an additional 6 hours of work in the SAC. The schedule which Plaintiff provides are key facts with which the entire litigation hinges, namely, addressing whether or not he has a valid claim for overtime and spread of hours pay. The contradictory schedule only arose once the Defendants properly questioned how the times and hours he alleged in the FAC sufficiently state claims for overtime and spread of hours. Only at this stage did Plaintiff fabricate an additional, new day of work with specificity as to the time periods with which those additional hours occurred during the week. This information is run of the mill information for a plaintiff who should be aware of the work schedule he was provided week in a week out for the entire period of his employment. The pleadings filed in this action tests the boundaries of the open-ended pleadings as the operative complaint in this action is continuously

amended in an attempt to survive a motion to dismiss based on frivolous and patently false allegations. A clear example is that despite the three amendments to the Complaint, Perdomo continues to insist that he has worked for Defendant Direct Property Management since July 2013, despite the fact that the corporation did not come into existence until September 2015 (See, Exhibit D to Portesy Declaration).

Plaintiff, only after reviewing Defendants' motion to dismiss, realized the fatal flaws in his FAC, and changed the core of his allegations, absolutely contradicting the allegations in the FAC in relation to his overtime, spread of hours, and retaliation claims. Therefore, Defendants respectfully request that this Court disregard Plaintiff's SAC with respect to his allegations regarding his FLSA and NYLL overtime, spread of hours, and retaliation claims and refer to his FAC when considering the instant motion.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's SAC should be dismissed with prejudice for failure to state a claim upon which relief can be granted. The Court should disregard the SAC and take the FAC as true due to Plaintiff's numerous contradictory statements created to fabricate claims which are non-existent and are a waste of valuable judicial resources.

Dated: May 2, 2019
       New York, New York

Yours Truly,

_____

Anthony R. Portesy, Esq.
Varacalli & Hamra LLP
*Attorneys for Defendants*

32 Broadway, Suite 1818
New York, New York 10004
Tel.: (646)-590-0571
Email: aportesy@vhllp.com