UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JULIAN PERDOMO, on behalf of himself, :
FLSA collective plaintiffs, and the class, :
               Plaintiff, :
v. : **OPINION AND ORDER**
     :
113-117 REALTY, LLC, DIRECT : 18 CV 9860 (VB)
PROPERTY MANAGEMENT, LLC, and :
LAWRENCE MAROLDA, :
               Defendants. :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Julian Perdomo brings this putative collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et. seq., and putative class action under New York labor laws (the New York Labor Law and the Official Compilation of Codes, Rules & Regulations of the State of New York, title 12, collectively the "NYLL"),[1] against defendants 113-117 Realty, LLC, Direct Property Management, LLC, and Lawrence Marolda for unpaid compensation and for violations of the wage and hour notice and wage statement requirements. Plaintiff also brings retaliation claims under the FLSA and the NYLL.

    Now pending is defendants' motion to dismiss the second amended complaint pursuant to Rule 12(b)(6). (Doc. #36).

    For the following reasons, the motion is DENIED.

    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

---

[1]     Count II of plaintiff's second amended complaint alleges violations of the NYLL, although it does not specify under which sections of the NYLL the claims arise. Even though plaintiff—who is represented by counsel—has had three opportunities to state his claims, the Court now construes the allegations contained in the complaint under unspecified provisions of the NYLL and the corresponding state regulatory framework.

1

**BACKGROUND**

For purposes of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the second amended complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.

I.      Plaintiff's Employment

Defendants own and operate building management companies that service their clients' properties.

Plaintiff was employed by defendants as a maintenance and repair worker from July 2013 until February 2018. From July 2013 to December 2014, plaintiff was paid a fixed salary of $425.00 per week. From January 2015 to February 2018, he was paid a fixed salary of $576.00 per week.

According to plaintiff, he was "scheduled to work, and did work, fifty-six (56) hours per week, from 8:00am until 5:00pm, from Mondays through Fridays, from 12:00pm to 4:00pm, on Saturdays, and from 10:00am to 5:00pm, on Sundays." (Second Am. Compl. ("SAC") ¶ 25). Plaintiff alleges he also worked "at least an additional six (6) hours per week, on top of his scheduled fifty-six (56) hours of work per week" as a result of being "on call" at least three times per week until 7:00 p.m. (Id.). Accordingly, plaintiff alleges he worked "a total of sixty-two (62) hours per week." (Id.).

Plaintiff also claims he was required to work without a lunch break daily and worked ten or more hours the three weekdays he was on call, without receiving spread of hours compensation. Further, plaintiff alleges that throughout his employment, defendants failed to provide proper wage and hour notices, and wage statements. Plaintiff insists defendants "did not maintain a system for tracking" employees' "actual hours worked." (SAC ¶ 25).

II.     Plaintiff's Complaints and Termination

Plaintiff asserts that he "complained to various property managers and superintendents," including defendant Marolda, "that [defendants] failed to pay him for all of his hours worked." (SAC ¶ 35). Plaintiff alleges Marolda "brushed him off" and offered "a variety of excuses." (Id.).

In February 2018, plaintiff alleges he complained directly to Marolda "that he was being underpaid for working seven days a week and that [d]efendants needed to pay him for his overtime hours worked." (SAC ¶ 35). Plaintiff alleges he told Marolda he thought his compensation was "messed up." (Id.).

Defendants terminated plaintiff's employment on or about February 21, 2018.

III.    Procedural Background

On October 25, 2018, plaintiff commenced this lawsuit, alleging violations of the FLSA and the NYLL. Then on January 15, 2019, plaintiff filed a first amended complaint bringing additional claims for retaliation. In response, defendants filed a motion to dismiss on February 26, 2019. Plaintiff filed a second amended complaint on March 21, 2019. Thereafter, defendants filed the instant motion to dismiss.

## DISCUSSION

I.      Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" suggested by the Supreme Court in Ashcroft v. Iqbal. 556 U.S. 662, 679 (2009).[2] First, "[t]hreadbare recitals of the elements of a

---

[2]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

II. Amended Pleadings

Defendants argue the Court should disregard the second amended complaint and instead refer to plaintiff's first amended complaint because the second amended complaint is inconsistent with plaintiff's prior pleadings.

The Court declines to do so.

A. Legal Standard

"It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977). More recently, district courts in this Circuit "have considered prior inconsistent pleadings relevant, but held that they served only as controvertible, not conclusive admissions." Palm Beach Strategic Income, LP v. Salzman, 2011 WL 1655575, at *5 (E.D.N.Y. May 2, 2011),

4

aff'd, 457 F. App'x 40 (2d Cir. 2012). "But some courts have disagreed, holding that a district court has no obligation to accept as true an amended complaint's allegations, if they directly contradict the facts set forth in [the] original complaint." Id.; see also Colliton v. Cravath, Swaine & Moore LLP, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) ("Where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true.").

Although "there may be a rare occasion to disregard the contradictory and manipulated allegations of an amended pleading, the more usual and benevolent option is to accept the superseded pleadings but allow the factfinder to consider the earlier pleadings as admissions in due course." Barris v. Hamilton, 1999 WL 311813, at *2 (S.D.N.Y. May 17, 1999). Then a court may "distinguish[] between blatant or directly contradictory allegations, and allegations that can be described as clarifying but inconsistent." Palm Beach Strategic Income, LP v. Salzman, 2011 WL 1655575, at *5.

B. Application

Here, plaintiff's prior pleadings contain "clarifying but inconsistent" statements rather than "directly contradictory allegations." See Palm Beach Strategic Income, LP v. Salzman, 2011 WL 1655575, at *5. In the original complaint, plaintiff alleged defendants failed to pay overtime and spread of hours when he worked fifty-eight hours per week, including through lunch. (See Doc. #38 ("Portesy Decl.") Ex. A ("Compl.") ¶¶ 25–28, 31). Plaintiff's original complaint also included allegations that defendants failed to provide wage and hour notices, and wage statements.

5

The first amended complaint is consistent with the original complaint. There, plaintiff alleged failure to pay overtime and spread of hours on fifty-eight hours per week worked, including through lunch. (Portesy Decl. Ex. B ("First Am. Compl.") ¶¶ 25–28, 31). The first amended complaint retained allegations regarding defendants' failure to provide wage and hour statements. It also added retaliation claims. For those claims, plaintiff argued he was terminated after complaining to his manager, non-party Francisco De Jesus, about unpaid overtime. Plaintiff alleged that after Marolda heard about plaintiff's complaints, Marolda instructed De Jesus to fire plaintiff.

In the second amended complaint, plaintiff makes similar allegations about unpaid overtime and spread of hours; however, he claims to have worked a weekly schedule of fifty-six hours per week with an additional six hours of "on call" time, bringing his total hours worked to sixty-two hours per week. (SAC ¶¶ 25–28, 31). He makes consistent claims of defendants' failure to provide lunch breaks, wage and hour notices, and wage statements. However, even though plaintiff maintains his retaliation claims, he bases those claims on his conversation with Marolda, rather than with De Jesus. These statements may tend towards the inconsistent, but they are not contradictory.[3]

Accordingly, the second amended complaint is the operative pleading, and the Court will assess defendants' motion to dismiss respecting same.

---

[3] Defendants argue the second amended complaint's addition of an extra day of work constitutes a fabrication by plaintiff. The second amended complaint contains additional hours, but not additional overtime claims. Moreover, the first amended complaint contained similar allegations of state and federal overtime violations. Thus, the Court will not reject wholesale the allegations in the second amended complaint.

III.   FLSA Retaliation Claim

Defendants argue plaintiff has failed adequately to allege a claim for retaliation under the FLSA.

The Court disagrees.

A.   Legal Standard

Under the FLSA it is "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]." 29 U.S.C. § 215(a)(3). "FLSA retaliation claims are subject to the three-step burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Mullins v. City of New York, 626 F.3d 47, 53 (2d Cir. 2010). "Thus, a plaintiff alleging retaliation under FLSA must first establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." Id.

As to the first step—establishing participation in a protected activity—for an activity to be protected and "fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 14 (2011). "This standard can be met, however, by oral complaints, as well as by written ones." Id.

Interpreting Kasten, the Second Circuit distinguished between "a grumble in the hallway about an employer's payroll practice," and "a complaint filed with the employer." Greathouse v.

JHS Sec. Inc., 784 F.3d 105, 116 (2d Cir. 2015). Indeed, the statute "contemplates some degree of formality." Id. (citing Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. at 14). But this level of formality merely requires that "the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns." Id.

As to the second step, a plaintiff must establish the defendant took an adverse employment action. An adverse action is not defined solely in terms of job termination or reduced wages and benefits. Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997) (discussing retaliation under Title VII and the Age Discrimination in Employment Act). However, such an action would be considered adverse.

Finally, as to the third step, a plaintiff must establish a causal connection between the complaint and the adverse action. Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 473 (S.D.N.Y. 2008). The "causal connection may be established by (1) evidence of retaliatory animus directed against a plaintiff by the defendant; or (2) a close temporal proximity between the protected activity and the adverse employment action." Id.

B. Application

Plaintiff has adequately alleged he engaged in a protected activity and suffered an adverse employment action as a result.

To satisfy the first step, plaintiff asserts he complained to Marolda repeatedly. Plaintiff alleges he had a conversation with Marolda in February 2018, during which plaintiff complained that his "compensation was 'messed up' and that [defendants] shorted him for the overtime hours." (SAC ¶ 35). Plaintiff's complaints to Marolda were sufficiently formal and gave

8

Marolda "fair notice that a grievance [had] been lodged." Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. at 14.

Plaintiff was fired. That satisfies the second step. As to the third step, plaintiff alleges his termination occurred within weeks of his complaint to Marolda. A close temporal proximity between the protected activity and the adverse employment action—here, within weeks—is sufficient at this early stage in the proceedings to allege a causal connection between the two. Torres v. Gristede's Operating Corp., 628 F. Supp. 2d at 473.

Accordingly, the Court finds plaintiff has adequately alleged a retaliation claim under the FLSA.

IV. NYLL Retaliation Claim

"Like the FLSA, [the NYLL] prohibits retaliation against employees who make certain employment-related complaints." Flick v. Am. Fin. Res., Inc., 907 F. Supp. 2d 274, 279 (E.D.N.Y. 2012). Section 215 of the NYLL prohibits retaliation against any employee who "has made a complaint to his or her employer, or to . . . any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision" of the NYLL. N.Y. Labor L. § 215(1)(a). "New York's Labor Law explicitly covers complaints made to an employer," and thus, it is broader than the FLSA. Flick v. Am. Fin. Res., Inc., 907 F. Supp. 2d at 279.

Because the Court has already determined plaintiff adequately alleged a claim for retaliation under the FLSA, plaintiff's NYLL retaliation claim also survives defendants' motion to dismiss. Moreover, plaintiff's second amended complaint alleges he complained directly to Marolda, on more than one occasion. Such conduct is specifically protected under the NYLL.

9

V.   FLSA Putative Collective Claims

   A.   Overtime Claim

The Court finds plaintiff has adequately alleged an FLSA claim for unpaid overtime.

The FLSA requires employers to pay overtime wages to employees who work more than forty hours in a week. See 29 U.S.C. § 207. "For every hour a non-exempt employee works above 40 in a given week, the FLSA requires employers to pay "a rate not less than one and one-half times the regular rate at which he is employed." Id. § 207(a)(1). To state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013).

Plaintiff claims he is a non-exempt employee whose employer is covered by the FLSA. Plaintiff alleges he was scheduled to and did work fifty-six hours each week. According to plaintiff, he also worked additional on-call hours three times each week. Importantly, plaintiff alleges he was paid a fixed salary for the duration of his employment, without overtime pay.

Thus, plaintiff has adequately stated a claim for unpaid overtime under the FLSA.

   B.   Wage and Hour Notice Claim

The Court finds plaintiff has adequately alleged an FLSA claim for failure to provide notice of employee rights.

According to federal regulations, covered employers must "post and keep posted a notice explaining the [FLSA], . . . in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy." 29 C.F.R. § 516.4.

Here, plaintiff alleges defendants did not "properly disclose or apprise [p]laintiff" of his "rights under the FLSA." (SAC ¶ 44). However, plaintiff's particular allegations concerning

defendants' failure to provide notice claim are sparse. Nevertheless, under a holistic reading of the second amended complaint, plaintiff plausibly alleges defendants failed to post wage and hour notices. Those claims are cognizable under the FLSA.

Accordingly, plaintiff has stated a claim under the FLSA's wage and hour notice posting requirement.

VI. <u>NYLL Putative Class Claims</u>

    A. <u>Overtime and Spread of Hours Claims</u>

Under the NYLL, an employee is entitled to recover unpaid wages. <u>Jowers v. DME Interactive Holdings, Inc.</u>, 2006 WL 1408671, at *9 (S.D.N.Y. May 22, 2006) (citing N.Y. Lab. Law § 198).

Although there is no state statutory provision addressing the payment of overtime wages, the New York State Department of Labor regulation mandates:

> An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 USC 201 <u>et</u> <u>seq</u>., the Fair Labor Standards Act of 1938[.]

12 N.Y.C.R.R. § 142–2.2. Like the FLSA, the NYLL requires "that employees receive a wage at least equal to 150% of their regular rate of pay for those hours worked in excess of 40 hours per workweek." <u>Paz v. Piedra</u>, 2012 WL 12518495, at *8 (S.D.N.Y. Jan. 12, 2012).

As discussed above, plaintiff alleges he worked more than forty hours per week and defendants failed to pay an overtime premium above plaintiff's fixed weekly salary. Accordingly, the motion to dismiss plaintiff's state law overtime claim is denied for the same reasons the motion is denied with respect to plaintiff's FLSA overtime claim.

Similarly, under New York law, "an employee must 'receive one additional hour of pay at the basic minimum hourly wage rate' for each workday in which the 'spread of hours' of the

11

employee's workday exceeds ten hours." Paz v. Piedra, 2012 WL 12518495, at *8 (citing 12 N.Y.C.R.R. § 146–1.6). The "spread of hours" is "the length of the interval between the beginning and end of an employee's workday," which "includes working time plus time off for meals plus intervals off duty." Id. Employees whose workdays exceed ten hours are "owed an additional hour of compensation at the base minimum wage." Id.

Here, plaintiff alleges he "regularly worked ten (10) or more hours for three (3) days per week," but defendants did not provide spread of hours compensation for these days. (SAC ¶ 25). Thus, plaintiff has adequately alleged he is owed an additional hour of compensation for each day he worked in excess of ten hours.

B. Wage and Hour Notice Claim

New York law "require[s] employers to post notices explaining wage and hour requirements." Upadhyay v. Sethi, 848 F. Supp. 2d 439, 445 (S.D.N.Y. 2012). The regulation mandates all covered employers "post in a conspicuous place" "a notice issued by the Department of Labor summarizing minimum wage provisions." 12 N.Y.C.R.R. § 142–2.8.

Here, plaintiff alleges defendants did not provide proper wage and hour notices to plaintiff. Specifically, plaintiff alleges defendants "failed to . . . notify employees of their overtime rate," and defendants "operated their business with a policy of not providing a proper wage notice" to plaintiff. (SAC ¶¶ 51, 53).

Accordingly, plaintiff has stated a claim under the NYLL's wage and hour notice posting requirement.

C. Wage Statements Claim

The NYLL also requires that employers maintain records for their employees who fall under the NYLL's wage protections. N.Y. Lab. Law §§ 195, 661. These records must include

"the number of hours worked daily and weekly, including the time of arrival and departure of each employee working a split shift or spread of hours exceeding 10." 12 N.Y.C.R.R. § 142–2.6(a)(4). Covered employers are required to provide "each employee a statement with every payment of wages, listing hours worked, rates paid, gross wages, allowances, if any, claimed as part of the minimum wage, deductions and net wages." Id. § 142–2.7.

Here, plaintiff alleges defendants did not keep or provide payroll records throughout his employment. Thus, plaintiff has adequately stated a claim under the NYLL's wage statements requirement.

D. Failure to Provide Lunch Breaks

Only once in the second amended complaint does plaintiff allege defendants failed to provide him with lunch or meal breaks. (See SAC ¶ 25). It is unclear under what provision of law plaintiff asserts this claim.

The FLSA does not require employers to provide lunch breaks. See Gordon v. Kaleida Health, 299 F.R.D. 380, 395 (W.D.N.Y. 2014); see also U.S. Dept. of Labor Wage and Hour Division, Handy Reference Guide to the Fair Labor Standards Act, at 1 (WH Publication 1282, rev.'d Apr. 2011), available at www.dol.gov/whd/regs/compliance/wh1282.pdf. However, the NYLL requires employers to provide employees with meal periods. N.Y. Lab. Law § 162. As such, plaintiff has plausibly alleged an NYLL violation, and therefore defendants' motion to dismiss this claim must be denied.

VII. Supplemental Jurisdiction

Defendants argue that because plaintiff cannot maintain any federal claims, the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims.

13

As discussed above, plaintiff has alleged plausible FLSA claims for retaliation, and for failure to pay overtime and post notices. Furthermore, plaintiff's FLSA and NYLL claims arise from a common nucleus of operative fact, as required for the exercise of supplemental jurisdiction. Thus, pursuant to 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction to hear plaintiff's state law claims for unpaid compensation and other NYLL violations.

## CONCLUSION

Defendants' motion to dismiss is DENIED.

The Clerk is instructed to terminate the motion. (Doc. #36).

Dated: December 20, 2019
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge